## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOS

|  |  |
|---|---|
| Dr. Jay Joshi and National Pain Centers, LLC<br><br>       Plaintiffs,<br><br>v.<br><br>Dr. Jay K. Joshi, Institute of Advanced Care & Analytics, PC d/b/a Prestige Clinics,<br><br>       Defendants. | Case No.: 18-civ-5426<br>The Hon. Sara L. Ellis |

## OPPOSITION TO MOTION TO DISMISS

Plaintiffs, DR. JAY JOSHI ("Plaintiff Joshi") and NATIONAL PAIN CENTERS, LLC ("NPC") (collectively "Plaintiffs"), by and through undersigned counsel, hereby opposes Defendants', DR. JAY K. JOSHI's ("Defendant Joshi") and INSTITUTE OF ADVANCED CARE & ANALYTICS, PC d/b/a PRESTIGE CLINICS' ("Prestige Clinics") (collectively "Defendants") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion") as follows:

### I.    INTRODUCTION AND BACKGROUND

Plaintiff Joshi is a locally and nationally recognized board certified Anesthesiologist and fellowship trained Interventional Spine and Pain Management physician with 18 years of experience (all in anesthesiology, pain medicine, and interventional pain management). Plaintiff Joshi is the owner of NPC, an Illinois limited liability company that manages Plaintiff Joshi's physician services. Plaintiffs filed an eight count complaint against Defendants for various unfair competition torts and unjust enrichment based upon Defendants' improper and illegal misappropriation of Plaintiff Joshi's commercial reputation and credentials as a pain medicine

physician.  Specifically, the Complaint alleges that Defendant Joshi, a general practitioner with no training or certifications in pain medicine, intentionally marketed himself as a pain physician to deceive consumers into confusing him with the Plaintiff Joshi, and exploited that confusion to build an illegitimate, but busy and lucrative, pain medicine practice at Prestige Clinics. *See* Compl., ¶22. Defendant Joshi's stratagem of free riding on the goodwill and reputation of the Plaintiff Joshi was so successful that the Defendant Joshi was soon literally doing nothing but writing pain prescriptions for controlled substances, all day, every day.[1] *Id*., ¶24-25. Federal authorities found that between April and December 2017, the Defendant Joshi issued more than 6,000 prescriptions for controlled substances, seeing 30-40 pain patients a day. *Id*. Even worse, the Defendant Joshi was writing these prescriptions without performing any of the necessary medical evaluations a doctor is required to under the law. *Id*. The Defendant Joshi's mercenary and reckless behavior in "treating" his pain patients evidences that his pursuit of pain medicine had no legitimate basis and was merely an opportunistic capitalizition on the Plaintiff Joshi's sterling reputation to cut corners and make money fast. *Id*., ¶23.

On January 18, 2018, the Defendant Joshi was indicted on four counts of dispensing opioids "not prescribed for a legitimate medical purpose, and outside the scope of professional

---

[1] As one commentator noted  of Defendant Joshi's situation:

> [I]f a doctor writes 6000 prescriptions for pain pills over an 8 month time period that's 750 prescriptions in a month.  Or about 32 scripts a day.  If one is writing that many prescriptions for pain pills in a day that must be all that the doctor is doing.  But, aren't family doctors supposed to take care of high blood pressure, diabetes, upper respiratory infections, CHF, etc.  If so when could they have time to provide primary care if their schedule has 32 pain pill requiring patients on it every day??  I am a pain specialist and I only see about 20 chronic pain patients every day.  Our whole practice, that includes 5 MD's and 3 Nurse practitioners, does not in TOTAL write anywhere near 32 scripts for opioids on a daily basis for all 8 providers!

*See* Shaun Kondamuri, MD, *The Increasingly Fatal Opioid Epidemic*, Midwest Interventional Spine Specialists Health Blog (Jan. 24, 2018), https://spinecaremw.com/blog-post/munster-doctor-indicted-prescribing-painkillers (last visited December 31, 2018).

practice." *Id*., ¶26. The indictment received a great deal of press attention and was the first time

that the Plaintiff Joshi was made aware that the unqualified Defendant Joshi was illegitimately

practicing pain medicine and misappropriating his professional identity and reputation. The effects

of the Imitator Joshi's actions on the Real Dr. Joshi's life, reputation, business, medical practice,

family, and patients have been catastrophic. Compl., ¶27.

Plaintiffs filed the eight count Complaint against Defendants on August 9, 2018. The

Complaint sets forth causes of action for: Count I for Section 43(a)(1)(A) false designation of

origin or sponsorship/endorsement and unfair competition; Count II for unfair competition

pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act and the Illinois

Uniform Deceptive Trade Practices Act; Count III for Section 43(c) trade name dilution; Count IV

for trade name dilution under the Illinois Trademark Registration and Protection Act; Count V for

trade name dilution under Illinois common law; Count VI for unfair competition under Illinois

common law; Count VII for unfair competition under Indiana common law; and Count VIII for

unjust enrichment. Defendants moved to dismiss the Complaint on December 3, 2018 and

Plaintiffs now present the Court with their opposition.

## II.     MEMORANDUM OF LAW

### A.  Legal Standard on a Rule 12(b)(6) Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not

its merits." *Yellow Grp. LLC v. Uber Techs. Inc.*, 2014 U.S. Dist. LEXIS 94093, at *5-6 (N.D. Ill.

July 10, 2014) (*citing* Fed. R. Civ. P. 12(b)(6)); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520

(7th Cir. 1990)). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all

well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts

in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

"[A]t the pleading stage, a one-to-one factual showing of each element of the prima facie case is not necessary." *Avilés v. Figueroa*, 195 F. Supp. 3d 435, 444-45 (D.P.R. 2016). Rather, a plaintiff is merely required to plead a claim that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facially plausible standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Courts have recently emphasized "the particular need to apply the plausibility standard with a recognition that direct evidence of some facts . . . may be distinctively in the defendant's possession, requiring that the threshold standard of plausibility be applied to more circumstantial evidence." *ABB Turbo Sys. AG v. Turbousa, Inc.*, 774 F.3d 979, 988 (Fed. Cir. 2014) (citing Fed. R. Civ. P. 8; *Iqbal*, 556 U.S. at 679; *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 49 & n.15 (2011)). Finally, a complaint need not specify the correct legal theory nor point to the right statute to survive a Rule 12(b)(6) motion to dismiss, provided that "relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992).

### B. Count I: Plaintiffs Have Properly Pleaded a Claim for False Designation of Origin or Sponsorship/Endorsement and Unfair Competition Pursuant to 15 U.S.C. 1125(a) [Section 43(a) of the Lanham Act].

Count I[2] of the Complaint alleges a Section 43(a)(1)(A) claim for false designation of origin or sponsorship/endorsement and unfair competition. "False endorsement occurs when a

---

[2] Plaintiffs note that the heading of Count I of the Complaint reads as follows: "COUNT I - FALSE DESIGNATION OF ORIGIN OR SPONSORSHIP/ENDORSEMENT, TRADE NAME DILUTION, AND UNFAIR COMPETITION UNDER 15 U.S.C. 1125(a)." The inclusion of the words "TRADE NAME DILUTION" in this heading was an inadvertent error. The heading should read as follows: "COUNT I - FALSE DESIGNATION OF ORIGIN OR SPONSORSHIP/ENDORSEMENT, AND UNFAIR COMPETITION UNDER 15 U.S.C. 1125(a)." A cause of action for dilution claims is not available under §1125(a). The paragraphs setting forth Count I are consistent with this and do address any issues of dilution.

person's identity is connected with a product or service in such a way that consumers are likely to be misled about that person's sponsorship or approval of the product or service." *Maremont v. Susan Fredman Design Grp., Ltd.*, 772 F. Supp. 2d 967, 971 (N.D. Ill. 2011) (*quoting Stayart v. Yahoo! Inc*., 651 F.Supp.2d 873, 880-81 (E.D. Wis. 2009)). It is well-established that a plaintiff bringing a false designation of origin, sponsorship, or endorsement claim under section 43(a) is not required to prove that he or she has a valid trademark. *Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP*, 184 Cal. App. 4th 313, 342, 109 Cal. Rptr. 3d 143, 168 (2010) (construing Federal law); *see also Zyla v. Wadsworth*, 360 F.3d 243 (1st Cir. 2005) (Section 43(a)(1) is not limited to protection of trademark holders; existence of trademark is not a necessary prerequisite to § 43(a) action); *Ames Pub. Co. v. Walker-Davis Publications, Inc*., 372 F. Supp. 1 (E.D. Pa. 1974) (liability under § 43 may arise for false description or representation even though no trademark is involved). Courts have repeatedly recognized a § 43(a) injury where things like the plaintiffs' voices, uniforms, likenesses, published words, or names – things that may not necessarily meet the requirements of a protectable trademark under the Lanham Act - were used in such a way as to deceive the public into believing that they endorsed, sponsored, or approved of the defendant's products or services. *See Abdul-Jabbar v. General Motors Corp*., 85 F.3d 407 (9th Cir. 1996) (athlete's name and accomplishments used in television advertisement for Oldsmobile automobiles); *Waits v. Frito-Lay, Inc.,* 978 F.2d 1093, 1107 (9th Cir. 1992) (imitation of singer's unique voice used in radio commercial advertising Dorito Chips); *Maremont*, 772 F. Supp. 2d at 971 (plaintiff, a professional interior designer, stated a proper § 43(a)(1) false endorsement claim by alleging that she was engaged in the commercial marketing of her skills and services when defendants wrongfully used her name and likeness by authoring tweets under her name; no showing of trademark registrability or secondary meaning was required by this Court).

Thus, to prevail on their Section 43(a) false designation of origin, sponsorship or endorsement claim, where it is the Plaintiff Joshi's identity, reputation, and credentials (and not a registrable mark) that are at issue, Plaintiffs must prove only that "(1) [Defendants] made a false or misleading representation of fact (2) in interstate commerce (3) in connection with goods or services, (4) the misleading statement is likely to cause confusion as to [Defendants'] affiliation or association with Plaintiffs or Plaintiffs' approval of [Defendants'] service, and (5) this conduct has harmed or will harm Plaintiffs." *Yellow Grp.*, 2014 U.S. Dist. LEXIS 94093, at *15-16. Plaintiffs have more than sufficiently alleged these five elements in the Complaint. Plaintiffs state that despite having no experience or expertise in pain medicine whatsoever, the Defendant Joshi began holding himself out to the public in Indiana and Illinois as a pain medicine specialist with the intention that prospective patients would confuse him with the well-known and well-regarded pain specialist the Plaintiff Joshi, and thus creating an entirely new, robust (and illegitimate) revenue stream for himself and Defendant Prestige Clinics on the coattails of Plaintiff Joshi's years of expertise, experience, and hard work. Compl., ¶¶22-23. Specifically, among other things, Defendant Joshi misappropriated the Plaintiff Joshi's contact information and positive reviews, and took calls from and gave interviews to journalists who thought they were speaking the Plaintiff Joshi, diverting patients and press coverage from the Plaintiff Joshi. *Id.* When the Defendant Joshi was indicted, the Plaintiff Joshi's medical practice and life was decimated as a result of the confusion that the Defendant Joshi had cultivated. The specifics of this harm are detailed in paragraphs 27 and 28 of the Complaint. These allegations are not perfunctory or conclusory, and are more than sufficient to state a § 43(a)(1)(A) false endorsement claim at this stage of the proceedings.

Defendants incorrectly argue that in order to state a § 43(a) false endorsement claim,

Plaintiffs must allege "trademark use" of, and secondary meaning in the name "Dr. Jay Joshi." *See* Motion, p. 7-11. But Plaintiffs seek relief for false designation of origin, sponsorship, or endorsement, not trademark infringement. As explained immediately above, Plaintiffs do *not* need to allege or show that "Dr. Jay Joshi" or any permutation thereof is a valid trademark; existence of technical trademark usage specimens and/or secondary meaning are not necessary prerequisites to a § 43(a) action for false designation of origin, sponsorship, or endorsement. *Franklin Mint*, 184 Cal. App. 4th at 342; *Zyla*, 360 F.3d 243; *Ames Pub.*, 372 F. Supp. 1 (E.D. Pa. 1974).

> 1) **Plaintiffs Have Sufficiently Alleged that They Have Protectable Trademark Rights in and Trademark Usage of the Name "Dr. Jay Joshi."**

Under Fed. R. Civ. P. 8, Plaintiffs are entitled to set out two or more statements of a claim alternatively or hypothetically, either in a single count or in separate ones. Fed. R. Civ. P. 8(e)(2). Thus, to the extent that in the alternative the Complaint is read to allege a cause of action for trademark infringement under § 43(a), Defendants' argument here would still fail *because the Complaint does in fact sufficiently allege that Plaintiffs have protectable trademark rights in the name "Dr. Jay Joshi."*[3] To wit, the Complaint states:

> NPC's primary stock in trade is the pain medicine and management services of the Real Dr. Joshi. The Real Dr. Joshi is the only treating physician at NPC's locations, and he and his expertise are featured prominently on and in NPC's marketing materials and website. As a result of Plaintiffs' long use, significant advertising, and promotional activities of the name "Dr. Jay Joshi," both NPC and the Real Dr. Joshi have amassed invaluable goodwill in the name "Dr. Jay Joshi." To the general public, consumers, journalists, and other practitioners and medical professionals, the name "Dr. Jay Joshi" serves to identify the source of NPC's services and represents both NPC's and the Real Dr. Joshi's impeccable reputation for responsible pain treatment and management. The trade name "Dr. Jay Joshi" is famous in the field of pain medicine.

---

[3] These allegations relate to Plaintiffs' claims for Federal and State trademark dilution and common law claims of trade name infringement. These allegations also would be relevant to and would satisfy a claim for § 43(a) trademark infringement, and can be read to state such a claim pursuant to Fed. R. Civ. P. 8.

Compl., ¶ 16 (emphasis added). Later in the Complaint, Plaintiffs allege,

> Plaintiffs have continuously marketed and performed their pain medicine services throughout the United States, including this judicial district. Plaintiffs have spent over 1 million dollars to build, maintain, advertise, promote and sell their services using the Real Dr. Joshi's name [*i.e.* Dr. Jay Joshi] and professional reputation. For example, Plaintiffs use the Real Dr. Joshi's name in advertisements, promotional materials including professionally produced video contents, brochures and on their websites located at www.nationalpain.com."

Compl. ¶ 30. 15 U.S.C. § 1127 provides that "a mark shall be deemed to be in use in commerce…(2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127. Using the name "Dr. Jay Joshi" in "advertisements, promotional materials including professionally produced video contents, brochures and on their websites" is clearly "use[] or display[] in the sale or advertising of" Plaintiffs' services "rendered in commerce." Thus, Defendants are incorrect when they say that these allegations are "boilerplate" and fail to allege trademark use. Motion, p. 9. Under the *Twombly* and *Iqbal* plausibility standards, the Complaint's allegations, taken collectively, more than sufficiently allege trademark use with the requisite specificity necessary at the pleading stage. *Avilés v. Figueroa*, 195 F. Supp. 3d 435, 444-45 (D.P.R. 2016) (on a motion to dismiss, plaintiffs need only plead the plausibility of a prima facie claim, and only after discovery must they establish each element).

### 2) Plaintiffs Have Abundantly Demonstrated that the Name Dr. Jay Joshi Has Acquired Secondary Meaning.

Likewise, the Complaint more than sufficiently alleges and demonstrates that the name "Dr. Jay Joshi" has acquired secondary meaning in the minds of the relevant public. Plaintiffs allege, "Based on Plaintiffs' consistent and extensive use, the Real Dr. Joshi's name has become widely and favorably known, has acquired secondary meaning, has become famous, and has acquired extensive goodwill." Compl., ¶ 31. Defendants complain that Plaintiffs fail to "allege

facts showing the duration, extent, and nature" of the use of the name "Dr. Jay Joshi" as to support the allegations of secondary meaning. Motion, p. 10. Yet the Complaint clearly sets forth that, (1) Plaintiff Joshi has been using the name "Dr. Jay Joshi" in the commercial context of his pain medicine practice for at least 18 years,[4] (2) Plaintiff Joshi founded Plaintiff NPC in or around January 2011,[5] (3) since that time Plaintiffs have continuously and prominently used the name "Dr. Jay Joshi" in the advertising and promotion of Plaintiffs' pain medicine services, to the tune of over $1 million in marketing expenditures in advertisements, promotional materials including professionally produced video contents, brochures, and on their websites located at www.nationalpain.com,[6] and (4) as a result of Plaintiffs' long use, significant advertising, and promotional activities of their pain medicine services under the name "Dr. Jay Joshi," the name "Dr. Jay Joshi" serves to identify the source of Plaintiffs' services to the general public, consumers, journalists, and other practitioners.[7]

Thus, while Defendants state in their Motion that Plaintiffs fail to allege facts showing the duration, extent, and nature of Plaintiffs' use of the name "Dr. Jay Joshi" in commerce, this is patently contradicted by the contents of the Complaint. Defendants suggest in a footnote that Plaintiffs should have attached to the Complaint some examples the Plaintiff Joshi's media coverage demonstrating that he is well-known and respected in his field to support the Complaint's allegations of secondary meaning. Motion, p. 11, fn 39. Rest assured, if this is what the pleading standard required, Plaintiffs could attach reams of documentation in support of the recognition and reputation enjoyed by the Plaintiff Joshi as a pain medicine expert. But such evidence is not necessary at this stage of the proceedings. *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53

---

[4] Compl., ¶ 14.
[5] Compl., ¶15
[6] Compl., ¶ 30.
[7] Compl., ¶ 16.

(1st Cir. 2013); *Seven Seas Techs., Inc. v. Infinite Comput. Sols., Inc.*, No. 3:18-CV-137-DPJ-FKB, 2018 U.S. Dist. LEXIS 185483, at *4-5 (S.D. Miss. Oct. 30, 2018) ("A plaintiff is not required to plead a complete case on the first day of litigation and will never be required to establish each element with direct evidence [at the pleading stage]."). Defendants incorrectly attempt to hold Plaintiffs to a higher standard than Rule 12(b)(6) and the plausibility standard require.

### C. Count II: Plaintiffs Have Properly Pleaded Their Claims for Unfair Competition Pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, the Illinois Uniform Deceptive Trade Practices Act, and for Unfair Competition Pursuant to Common Law.

Plaintiffs' allegations in support of their § 43(a) false endorsement claim also form the basis for Plaintiffs' claims under the Illinois Uniform Deceptive Trade Practices Act ("IDTPA") and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA") (Count II of the Complaint), as well as Plaintiffs' unfair competition claims under Illinois and Indiana common law (Counts VI and VII of the Complaint). By engaging in conduct that has caused and is likely to continue to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' services are associated or connected with Plaintiffs, or have the sponsorship, endorsement, or approval of Plaintiffs, Defendants have engaged in conduct in violation of §43(a)(1)(A) of the Lanham Act, which is also a violation of the IDTPA, 815 ILCS § 510/2. *Allied Van Lines, Inc. v. iMove, Inc.*, No. 1:17-cv-08021, 2018 U.S. Dist. LEXIS 12537, at *13-14 (N.D. Ill. Jan. 25, 2018). In turn, any practice described in Section 2 of the IDTPA is automatically a violation of the ICFDBPA. 815 ILCS § 505/2.[8]

---

[8] 815 ILCS § 505/2 provides:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or

It is well-established that Plaintiffs' Illinois statutory unfair competition claims and common law unfair competition claims are to be resolved according to principles set forth under the Lanham Act. *See Morningware, Inc. v. Hearthware Home Prods., Inc.*, 673 F. Supp. 2d 630, 639 (N.D. Ill. 2009) ("Where a plaintiff's factual allegations under the Illinois Uniform Deceptive Trade Practices Act also form the basis for plaintiff's claims under the Lanham Act, the legal inquiry is the same under both statutes."); *Trans Union LLC v. Credit Research, Inc.*, 142 F.Supp.2d 1029, 1038 (N.D. Ill. 2001) (interpreting claims for unfair competition under 15 U.S.C. § 1125, unfair trade practices under the Illinois Uniform Deceptive Trade Practice Act and Illinois Consumer Fraud and Deceptive Business Practices Act, as well as trademark infringement and unfair competition claims under Illinois common law to involve the same elements. Thus, given that Plaintiffs have sufficiently alleged all necessary elements to move forward on their §43(a) Lanham Act Claim, Plaintiffs' IDTPA, ICFDBPA and common law unfair competition claims are thus likewise impervious to dismissal. *Par Sterile Prods., LLC v. Fresenius Kabi USA LLC*, No. 14 C 3349, 2015 U.S. Dist. LEXIS 32409, at *21-22 (N.D. Ill. Mar. 17, 2015) (state law unfair competition claims based on properly pleaded § 43(a) allegations survive motion to dismiss).

### D. Count III: Plaintiffs Have Properly Pleaded Claims for Trade Name Dilution Pursuant to 15 U.S.C. 1125(c), the Illinois Trademark Registration and Protection Act ("ITRPA"), and Illinois Common Law.

Defendants' assertion that Plaintiffs trademark dilution claims should be dismissed is erroneous. To the extent that Defendants claim that Plaintiffs have failed to allege a protectable trademark as required to state a claim under §43(c), ITRPA, or Illinois common law (Counts III, IV, and V of the Complaint), such a notion is dispelled by the explanation in Sections II. B. (1) &

---

commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act. 815 ILCS § 505/2.

(2) above. *See supra*, pp. 7-9. That is to say, because the Complaint does indeed sufficiently allege use of the name "Dr. Jay Joshi" as a trademark, as well as secondary meaning in the "Dr. Jay Joshi" name, these claims have been properly pleaded and are immune to a Rule 12 (b)(6) motion. *Id.*

To the extent that Defendants argue that Plaintiffs do not satisfactorily allege that the "Dr. Jay Joshi" name is famous for purposes of 15 U.S.C. § 1125(c), Defendants are applying the wrong standard. Plaintiffs are not required to submit absolute proof in support of their famousness allegations at the pleadings stage. *Rodríguez-Reyes*, 711 F.3d at 53. The Complaint avers that (i) Plaintiff Joshi is known throughout the country as a leading pain management physician (Compl., ¶ 1; (ii) for the last decade, the Plaintiff Joshi has been recognized nationally and internationally for achievements in medicine and pain management, including multiple first-in-the-world discoveries, descriptions, treatments, procedures, and techniques (*Id.*); (iii) the Plaintiff Joshi regularly lectures nationally on various pain management guidelines and has a reputation for being a pain physician who has a strong education, outstanding skills, and unwavering ethics (Compl., ¶ 14); (iv) the Plaintiff Joshi is and has a reputation for being one of the leading scientific thought leaders on proper pain management, and he has worked in the Department of Substance Abuse at the World Health Organization in Geneva, Switzerland (*Id.*); and (v) Plaintiffs have spent over $1 million to promote their services using the "Dr. Jay Joshi" name in advertisements and promotional materials, including but not limited to professionally produced video contents, brochures and on their websites. Compl., ¶ 30.

These allegations are more than enough to satisfy the *Twombly* and *Iqbal* plausibility pleading standards. *See, e.g. Best Vacuum, Inc. v. Ian Design, Inc.*, No. 04 C 2249, 2005 U.S. Dist. LEXIS 9794, at *7 (N.D. Ill. Jan. 18, 2005) (plaintiff's allegations that (i) its mark is famous and is "one of the most widely recognized brands in the nation," whose "fame and goodwill . . . is one

of [plaintiff's] most valuable corporate assets;" plaintiff is "a world leader in the market for vacuum cleaners", and "the leading United States distributor" of Miele brand vacuum cleaners; and (iii) plaintiff spent over one million dollars in marketing the name "Best Vacuum," without more, were not conclusory and sufficiently met the threshold for pleading fame for the purposes of a § 43(c) trademark dilution claim); *Doctor's Data, Inc. v. Barrett*, No. 10 C 03795, 2011 U.S. Dist. LEXIS 134921, at \*25 (N.D. Ill. Nov. 22, 2011) (court did not require, at the pleading stage, more beyond allegations of fame to survive a motion to dismiss federal and state trademark dilution claims ).

### E.  Count VIII: Plaintiffs Have Properly Pleaded a Claim for Unjust Enrichment.

Defendants do not specifically address Plaintiffs' claim for unjust enrichment other than to state that it allegedly fails for the reasons Plaintiffs' Lanham Act claims allegedly fail. Motion, p. 7. Defendants cite to no authority in support of this proposition, as indeed none exists for such a mistaken statement of law. In any event, Plaintiffs' Lanham Act claims withstand dismissal, as set forth above.

To state a cause of action for unjust enrichment, a plaintiff must establish: (1) the defendant has unjustly retained a benefit to the plaintiff's detriment, and (2) the defendant's retention of the benefit  violates the fundamental principles of justice, equity, and good conscience. *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 634-35 (N.D. Ill. 2016) (*citing HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc*., 131 Ill. 2d 145, 545 N.E.2d 672, 679, 137 Ill. Dec. 19 (Ill. 1989)). Plaintiffs have sufficiently pled that by misappropriating Plaintiff Joshi's name, credentials, and commercial reputation, Defendants obtained significant benefits, in the form of a huge surge in the amount of pain patients it was servicing. Compl., ¶ 25. Incorporating all relevant paragraphs of the Complaint into the claim, Plaintiffs go on to allege that Defendants retained substantial financial gain on account of this conduct, caused significant financial harm to Plaintiffs through this conduct, and it

is unjust and inequitable for Defendants to retain such financial gain without paying Plaintiff the value of the benefits acquired. Compl., ¶¶ 75-76. Based on these allegations Plaintiffs have robustly stated an unjust enrichment claim that satisfies the Rule 12(b)(6) standard.

**F. NPC Has Standing to Bring Counts I-VIII Against Defendants.**

In a footnote, Defendants cursorily allege that Plaintiff NPC "does not have standing to assert any claims under the Lanham Act." Motion, p. 1, fn 4. This is plainly wrong.

The Lanham Act provides standing to "any person who believes that he or she is or is likely to be damaged by such act [*i.e.*, anti-competitive conduct in a commercial context]." 15 U.S.C. § 1125(a). In order to satisfy the standing requirement for a false endorsement claim under § 43(a), Plaintiff NPC need only allege "a reasonable interest to protect, which some courts have characterized as a commercial interest." *Gruen Mktg. Corp. v. Benrus Watch Co*., 955 F. Supp. 979, 984 (N.D. Ill. 1997). "The plaintiff need not be the owner of a registered trademark in order to have standing to sue under Section 43(a)." *Id.*

The Complaint alleges that Plaintiff NPC's primary stock in trade is the pain medicine and management services of the Real Dr. Joshi. Compl., ¶ 16. The Plaintiff Joshi is the only treating physician at NPC's locations, and he and his expertise are featured prominently on and in NPC's marketing materials and website. *Id.* As a result of Plaintiffs' long use, significant advertising, and promotional activities of the name "Dr. Jay Joshi," NPC has amassed invaluable goodwill in the name "Dr. Jay Joshi." To the general public, consumers, journalists, and other practitioners and medical professionals, the name "Dr. Jay Joshi" serves to identify the source of NPC's services.

In light of these allegations, it strains credulity for Defendants to claim that NPC does not have a valid commercial interest in protecting the name "Dr. Jay Joshi." Plaintiff NPC indubitably has a reasonable commercial interest in protecting itself from Defendants' misappropriation of the

name, credentials, and reputation of "Dr. Jay Joshi," and thus NPC has standing to assert all eight claims alleged in the Complaint.

### G. Plaintiffs' Complaint Cannot be Dismissed Based Upon a Purported Fair Use Defense.

Defendants state in a footnote that, given that the Plaintiff Joshi and Defendant Joshi have the same name, a fair use defense is "fatal to [Plaintiffs' § 43(a)] claim." Motion, p. 9, fn. 32. This is incorrect. In the first place, any asserted fair use defense will fail on summary judgment or at trial because fair use does not apply where, as here, a defendant acte with a desire to capitalize on the plaintiff's reputation and create consumer confusion. *JA Apparel Corp. v. Abboud*, 682 F. Supp. 2d 294, 315 (S.D.N.Y. 2010). For the instant motion to dismiss purposes, "[a] plaintiff is not required to negate an affirmative defense in his complaint." *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1018 (N.D. Ill. 2014) (*quoting Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993)). As such an alleged fair use defense cannot undermine Plaintiffs' well-plead Complaint on a 12(b)(6) motion.

### H. If The Court Grants Defendants' Motion, Plaintiffs Request Leave To Amend The Complaint.

"The court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a). "[L]eave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001). While Plaintiffs maintain that the Complaint properly alleges the claims stated therein, in the event that the Court grants the Motion, Plaintiffs request leave to amend the Complaint.

## III.     CONCLUSION

For the above-stated reasons, Plaintiffs respectfully request that this Court enter an Order

denying Defendants' Motion to Dismiss.

Dated:              January 2, 2019               Respectfully submitted,

/s/ Mikhael Bortz
Mikhael Bortz (mbortz@bortzlawfirm.com)
BORTZ LAW FIRM, PA
4245 N. Knox Ave
Chicago, IL
Telephone: (800) 608-5407

*Attorneys for Plaintiffs.*

## CERTIFICATE OF SERVICE

The undersigned attorney of record certifies that on January 2, 2019, a copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ Mikhael Bortz
Mikhael Bortz (mbortz@bortzlawfirm.com)
BORTZ LAW FIRM, PA
4245 N. Knox Ave
Chicago, IL
Telephone: (800) 608-5407