**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| Dr. Jay Joshi and National Pain Centers, LLC<br><br>Plaintiffs,<br>v.<br><br>Dr. Jay K. Joshi, Institute of Advanced Care & Analytics, PC d/b/a Prestige Clinics,<br><br>Defendants. | Case No. 18 C 5426<br>The Hon. Sara L. Ellis |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISISS**

As Defendant Dr. Jay Joshi noted in his opening brief,[1] he sympathizes with the situation that Plaintiff Dr. Jay Joshi finds himself in. Having the same name, the same profession, and a similar geographic practice area as Defendant Dr. Jay Joshi, a man who has pleaded guilty to federal drug charges related to his medical practice, is unfortunate for him.[2] Defendant Dr. Joshi never meant any harm to Plaintiff Dr. Joshi, but it appears from the pleadings that Plaintiff Dr. Joshi feels aggrieved and frustrated by these circumstances.

But while proof of injury is an element of nearly every federal civil case, pleading mere injury rarely, if ever, is sufficient by itself to support one. In an effort to find a remedy for his perceived harm, it appears that Plaintiff Dr. Joshi has lost sight of this fact. It has led him contort his situation to shoehorn a Lanham Act theory, and has even led him to make the dubious claim

[1] Throughout, this brief refers to "Defendant Dr. Joshi" as shorthand, but is intended to include co-defendant, Institute of Advanced Care and Analytics, PC d/b/a Prestige Clinics. This motion is brought on both defendants' behalf.

[2] Defendant Dr. Jay Joshi does not through this motion argue the merits of the criminal charges to which he pled guilty, dispute the facts in his plea agreement, or otherwise comment on the merits of the prosecutorial decisions leading to his arrest and plea, but instead assumes solely for purposes of argument in this motion that these criminal proceedings have adversely impacted Plaintiff Dr. Jay Joshi in some way insofar as anyone may have inadvertently confused one man for the other.

that "Dr. Jay Joshi" is a "household name" in support of a federal dilution claim. What few specifics are set forth in the Complaint, however, do not support these federal claims for relief as shown in Defendant Dr. Joshi's opening brief and further below.

## I. PLAINTIFF DR. JOSHI'S COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY.

### A. Plaintiff Dr. Joshi's Lanham Act Claim for Infringement, to the Extent that He Has not Expressly Abandoned One, Fails to Allege Facts to Show Trademark Use or Protectable Trademark Rights.

In his motion, Defendant Dr. Joshi showed that Count I for infringement under the Lanham Act should be dismissed for two reasons. First, the Complaint did not allege that he ever used "Dr. Jay Joshi" as a mark (*i.e.*, as an identifier of the source of services as compared to the description of the person). Second, to the extent that such use could be presumed, the Complaint did not allege facts from which acquisition of secondary meaning for the descriptive personal name "Dr. Jay Joshi" could plausibly be inferred.

In his response, Plaintiff Dr. Joshi more or less abandons any infringement theory under the Lanham Act. Instead, he claims that he intended to plead a false endorsement or sponsorship theory all along.[3] Nevertheless, he argues that "to the extent that . . . [his own] Complaint *is read* to allege a cause of action for trademark infringement," he thinks he has stated one. He is wrong.

#### *1. Plaintiff Dr. Joshi Does Not Allege Any Facts Showing Use of His Name as a Source Identifier (i.e., Trademark Use) As Opposed to Describing the Man.*

In his opening brief, Defendant Dr. Joshi showed that the Complaint was deficient regarding the Section 43(a) infringement claim because it failed to allege any instance of use of the name "Dr. Jay Joshi" as a mark – *i.e.*, to indicate it as the source of goods or services. In his response, Defendant Dr. Joshi disagrees, but fails to point to any fact in the complaint showing such use.

[3] *See* Opposition to Motion to Dismiss (ECF No. 18) (hereafter cited as "Resp.") at 4.

Instead, he quotes the same conclusory paragraph alleging that "[t]o the general public, consumers, journalists, and other practitioners and medical professionals, the name 'Dr. Jay Joshi' serves to identify the source of NPC's services."[4] He further points to the National Pain web site as supposedly containing such use. But as Defendant Dr. Joshi noted in his opening brief, these are conclusory statements unsupported by any facts.

Moreover, as Defendant Dr. Joshi noted in his opening brief, the website that he points to contains only descriptive references to the man named Dr. Jay Joshi but does not use the term as a mark.[5] The website does contain the phrase "Dr. Jay Joshi," but it does so to describe the man, not in a way to indicate the source of branded medical services. This is insufficient, as Defendant Dr. Joshi noted in his brief, citing to numerous cases.[6] Plaintiff Dr. Joshi does not address a single one of these cases, let alone distinguish them from his situation here. Plaintiff Dr. Jay Joshi's claim fails because his complaint does not allege facts showing the use of his name as a source-identifying mark, just as such efforts failed on behalf of Lee Trevino and Princess Diana.[7]

2. *Plaintiff Dr. Joshi's Complaint Fails to Allege Facts that Make Secondary Meaning Plausible.*

Additionally, in his opening brief, Defendant Dr. Joshi showed that the Complaint was deficient for the Section 43(a) infringement claim because it failed to allege that the personal name and title that describes both him and the Defendant (among others) had acquired secondary

---

[4] *Id.* at 7.

[5] Since filing this lawsuit, the Plaintiffs have started to use the "TM" notation with each use of "Jay Joshi MD," regardless of whether the use is descriptive or as a mark, presumably to reflect the fact that it filed an application to register "JAY JOSHI MD" as a mark with the USPTO. Even if the USPTO decides to register "JAY JOSHI MD," this does not conclusively show that he has protectable rights in such a mark. The USPTO permits petitions for cancellation as set forth in 15 U.S.C. § 1064, including for descriptiveness without secondary meaning. Notably, since the Defendant moved to dismiss, Plaintiff Dr. Joshi has since sought to register "DR JAY JOSHI" in addition to "JAY JOSHI MD."

[6] *See* Memorandum in Support of Motion to Dismiss (ECF No. 13) (hereafter cited as "Brf.") at 8-9.

[7] *Id.* (*citing In re Lee Trevino Enters., Inc.*, 182 U.S.P.Q. 253, 253-54 (TTAB 1974) and *Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP*, 109 Cal Rptr. 3d 143, 163 (Cal. App. 2010)).

meaning as indicating the plaintiff as the source of any goods or services. The Defendant showed that the Complaint contained only conclusory boilerplate on this issue.

In response, Plaintiff Dr. Joshi claims his allegations are sufficient, but again simply repeats his boilerplate allegations. As he did in his complaint, Plaintiff Dr. Joshi again points to the accomplishments of the man described as Dr. Jay Joshi without any mention of how and whether he ever used his name and title as a mark (*i.e.*, as a source identifier of branded services) as opposed to being used to describe him as a doctor.[8] The distinction is significant but appears to be lost on Plaintiff Dr. Joshi.[9]

The *Lee Trevino* case – cited by Defendant Dr. Joshi in his opening brief but ignored by Plaintiff Dr. Joshi in his opposition – serves as a useful example of this distinction. Despite the fact that Lee Trevino was a famous professional golfer for decades, having won numerous major championships, these facts alone were not sufficient to make his name source-identifying. This was because there was no showing that his name was used as a mark to identify the source of goods and services.

Likewise, Defendant Dr. Joshi does not dispute in this motion the allegation that Plaintiff Dr. Joshi has practiced medicine for 18 years, or the allegation that he has invested $1m advertising and promoting his practice with the National Pain Centers. But neither of these things alleges factually how the name "Dr. Jay Joshi" was used: namely, that it was used as a source-identifying

[8] Plaintiff Dr. Joshi claims to have used the name "Dr. Jay Joshi" in "advertising and promotion" of his pain medicine services. *See* Resp. at 9. But the cited support for that claim is ¶ 30 of the Complaint (ECF No. 11), which only points back to the National Pain Centers web site. As noted previously, nothing on that web site (at least as it currently exists) shows the use of "Dr. Jay Joshi" as a mark but only to describe the person. These descriptive uses are insufficient.

[9] *See, e.g., In re Craigmyle*, 224 USPQ 791, 793 (TTAB 1984) (finding registrability under §2(f) not established by sales over a long period of time where there was no evidence that the subject matter had been used as a mark); *In re Kwik Lok Corp.*, 217 USPQ 1245, 1248 (TTAB 1983) (holding declarations as to sales volume and advertising expenditures insufficient to establish acquired distinctiveness. "The significant missing element in appellant's case is evidence persuasive of the fact that the subject matter has been used as a mark.").

mark rather than descriptively; if as a mark, for how long; whether advertising money was spent promoting the supposed "Dr. Jay Joshi" brand, or if it was used to promote his medical practice generally. As the Complaint does not indicate any instance of the name being used as a mark (as noted in the previous section), the duration of use or advertising expenditures also do not allege facts that show duration of use as a mark or promotion as a mark. As in the *Lee Trevino* case, these are distinctions that matter. Defendant Dr. Joshi does not concede even were such allegations to be pleaded, that they would necessarily suffice to show secondary meaning. Being well-known, as the *Lee Trevino* and Princess Diana examples show, is not the test for trademark use and secondary meaning of a personal name.

### B. Plaintiff Dr. Joshi's Lanham Act Endorsement Theory Fails Because He Has Not Alleged Anywhere in his Complaint that Defendant Dr. Joshi Ever Stated or Implied that the Plaintiff Endorsed or Sponsored His Medical Services.

In his response brief, Plaintiff Dr. Joshi shifts theories away from his actual pleading, claiming now that he never intended to allege a Lanham Act trademark infringement claim for the name "Dr. Jay Joshi," but instead meant primarily to assert a claim of false endorsement or sponsorship.[10] As explained further below, this attempt also fails because the Complaint nowhere contains any allegation of anything that Defendant Dr. Joshi said or wrote to convey to the consuming public that Plaintiff Dr. Joshi endorsed or sponsored Defendant Dr. Joshi's medical services.

In Plaintiff Dr. Joshi's retreat to a new theory of liability, he loses sight of the statutory language that creates the cause of action. Examining that language setting out the requirements of

[10] Despite this shift, Plaintiff Dr. Joshi also allows for the possibility that the Court might find a trademark infringement claim even though it is not clear he intends to state one. *See* Resp. at 7 (using the passive voice stating that "to the extent that in the alternative the Complaint *is read to allege* a cause of action for trademark infringement").

a Lanham Act false endorsement or sponsorship claim shows where Plaintiff Dr. Joshi's Complaint falls short. Specifically, Section 43(a) of the Lanham Act provides a cause of action against:

> Any person who, on or in connection with any goods or services, or any container for goods, *uses in commerce any word, term, name, symbol, or device*, or any combination thereof, or [e] any false designation of origin . . . which -
>
> A is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[.][11]

Plaintiff Dr. Joshi's argument in response to the motion to dismiss falls short because it fails to meet the "uses in commerce any word, term, name, symbol, or device" element of the statute. As explained further below, the motion to dismiss should be granted because Plaintiff Dr. Joshi's complaint fails to allege that Defendant Dr. Joshi used any "word, term, name, symbol, or device" alone or in combination to falsely convey any endorsement or sponsorship of Defendant Dr. Joshi's medical services by Plaintiff Dr. Joshi.

1. *The Plaintiff Does Not Allege any Word, Term, Name, Symbol, or Device Claiming Any "Origin" of any Services.*

Plaintiff Dr. Joshi mentions false designation of origin in the heading "B" on page 4 and again in the ensuing text in response to Defendant Dr. Joshi's motion to dismiss. But other than these references, he does not argue that he has stated a false designation of origin claim in his complaint. There is nothing in his Complaint that identifies any claim of origin (false or otherwise) of Defendant Dr. Joshi's medical services. Absent such allegations, such a claim must fail. To the extent that Plaintiff Dr. Joshi relies on the theory of false designation of origin in Count I, that claim should be dismissed.

[11] 15 U.S.C. § 1125(a) (emphasis added).

2. *The Plaintiff Does Not Allege any Word, Term, Name, Symbol, or Device Claiming or Implying Sponsorship or Endorsement Services by the Plaintiff.*

While courts have stated the test for a false endorsement claim in a variety of ways using different terms, most require at least (1) statements or representations by the defendant (*i.e.*, the use of a "word, term, name, symbol or device") ; which (2) are likely to cause consumers to believe that the plaintiff endorsed the defendant's products.[12] Plaintiff Dr. Joshi's statement of the law, while more detailed, is in accord.[13] Plaintiff Dr. Joshi's claim under the Lanham act endorsement theory fails because he has not alleged any false or misleading representations of fact by Defendant Dr. Joshi and has not alleged any statements, advertisements, other representations, let alone or the use of any "word, term, name, symbol, or device" that could possibly lead consumers to believe incorrectly that Plaintiff Dr. Joshi endorses or sponsors the services provided by Defendant Dr. Joshi. This pleading bar would be particularly high, given that Defendant Dr. Joshi has the right to use his own name.

In his response, Plaintiff Dr. Joshi claims that Defendant Dr. Joshi "began holding himself out to the public . . . as a pain medicine specialist"[14] but does not cite to any place in the Complaint alleging any factual misrepresentation or any other use of a "word, term, name, symbol, or device." Moreover, even crediting this conclusory allegation for anything, it does not amount to a

[12] *Martin v. Wendy's International, Inc.*, 183 F. Supp. 3d 925, 935 (N.D. Ill. 2016) (*citing* 15 U.S.C. § 1125(a)(1)(A); *Woodard v. Victory Records, Inc.*, No. 11 C 7594, 2016 U.S. Dist. LEXIS 42863, 2016 WL 1270423, at *9 (N.D. Ill. Mar. 31, 2016) (*citing Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 522 (7th Cir. 2014)); *see also Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1020 (3d Cir. 2008), *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007-08 (9th Cir. 2001)).
[13] *See* Resp. (ECF No. 18) at 6 (citations omitted).
[14] *See* Resp. (ECF No. 18) at 6.

representation that the plaintiff endorsed the defendant's services.[15] It does not even mention Plaintiff Dr. Joshi.

Beyond this conclusory allegation, the only "specifics" that Plaintiff Dr. Joshi claims to offer are that Defendant Dr. Joshi supposedly (1) "misappropriated Plaintiff Dr. Joshi's contact information and positive reviews;" and (2) took calls from and gave interviews to journalists who thought they were speaking to the Plaintiff Joshi."[16] Neither of these suffice as an allegation of false endorsement.

As to the first contention, it is not even clear that this allegation means. The Complaint does not explain what it means to "misappropriate" someone's contact information or misappropriate Plaintiff Dr. Joshi's medical (presumably customer) reviews. Beyond this, the supposed "misappropriation" does not allege that Defendant Dr. Joshi personally used Plaintiff Dr. Joshi's contact information in any way. If Plaintiff Dr. Joshi is suggesting that Defendant Dr. Joshi used the plaintiff's address, phone number, email address, or other contact information in Defendant Dr. Joshi's own statements (*e.g.*, on his web site or in his advertisements), then the plaintiff should say so in a pleading subject to Rule 11. If, on the other hand, Plaintiff Dr. Joshi is alluding to third-party web sites, the type that are well-known to contain erroneous information,[17]

---

[15] Even as a false advertising allegation it fails. It does not allege what was said and why the allegation was false. More importantly, it does not allege any statement in a "commercial advertisement." *See* 15 U.S.C. 1125(a)(1)(B).

[16] Resp. (ECF No. 18) at 16.

[17] Lawyers and judges are all-to-familiar with the problems with such third-party sites as they relate to our own profession. *See, e.g.,* Pfeifer, William, *Learn Why Attorneys Hate Avvo*, the balance|small business (July 6, 2018) (available at https://bit.ly/2FEbSnN) (last visited Jan. 16, 2019) ("Avvo creates a profile for each attorney whether the attorney wants one or not. It will not delete an attorney's profile even if the attorney files a lawsuit demanding that it be removed."); *see also id.* ("The information Avvo posts about attorneys is gathered from public sources and it might or might not be accurate. Avvo lets anyone write virtually anything about any attorney on that attorney's profile without verifying that the person really was or is a client.")

he should also say so, as such third-party conduct could not possibly be the basis for Lanham Act liability.[18]

As to the second contention, it is also wholly conclusory, as it does not identify any journalist, or any article written by any journalist. These are not facts uniquely within Defendant Dr. Joshi's control. He – and more importantly, the consuming public – would have to know of them if any such article were to be a valid basis for a false endorsement claim. If the Plaintiff knows of any such article in which Defendant Dr. Jay Joshi made statements falsely stating or implying an endorsement, he should allege such facts to show a plausible claim.

Absent such facts, the conclusory statement (even in its best light) does not amount to anything. Specifically, even assuming what is alleged is true (and it is not), it does not say that Defendant Dr. Joshi did or said anything (*i.e.*, used a "word, term, name, symbol, or device") to convey to the consuming public that Plaintiff Dr. Joshi endorsed or sponsored Defendant Dr. Joshi's medical services. In sum, even assuming that the conclusory statement above is true and adequately specific, it does not support a false endorsement or sponsorship claim.

3. *The Plaintiff's False Sponsorship or Endorsement Theory Fails for the Same Underlying Reason his Infringement Theory Fails – "Dr. Jay Joshi" is not a Unique Identifier of the Plaintiff as a Source for Medical Services.*

Even if the Complaint contained any allegation of statements by Defendant Dr. Jay Joshi, (which it does not), this still would not be enough to support a claim for false endorsement under the Lanham Act. This is because the title and name "Dr. Jay Joshi" do not uniquely identify one particular individual let alone the defendant. Instead – as Defendant Dr. Joshi noted in his opening

---

[18] There do not appear to be any accepted instances of a vicarious or contributory theory of false endorsement or sponsorship. *See, e.g., Lepore v. NL Brand Holdings LLC,* 16 Civ. 8115 (GBD), 2017 U.S. Dist. LEXIS 163035, at *7 (S.D.N.Y. Sep. 28, 2017) ("this Court is unaware of (and Plaintiffs do not cite to) a single case in which a court has found a defendant indirectly liable for false endorsement based on the acts of a third party.")

brief, the name identifies many people, several of whom are medical doctors and health professionals.

The Plaintiff makes a big deal about the fact that a false endorsement or sponsorship claim does not require proof of a valid, protectable trademark. But this fact gets the plaintiff only so far. Regardless, such a claim requires – even by the Plaintiff's own cited authorities – that the "person's identity" be used with a product or service "in such a way" that the consuming public is likely to believe that that person endorsed the goods or services.[19] Without reference to a *unique* identifying aspect of the plaintiff (*i.e.*, a trademark, trade dress or something akin to one), there is no basis on which to conclude that the consuming public could reasonably be misled to believe that there was an endorsement or sponsorship in the first place.[20]

Plaintiff's cited cases are all consistent with this premise. For example, the use of a facsimile of Tom Waits' characteristic raspy and gravely voice[21] in a corn-chip commercial gave rise to a false endorsement claim under the Lanham Act because the sound of Tom Waits' voice is a unique and well-known identifier of him and not others.[22] Famous people with unique names which are misused can also give rise to such claims. So, the use of "Lew Alcindor" along with other identifying facts in a car commercial was found to violate the Lanham Act's false endorsement provision because of the popularity of Kareem Abdul-Jabbar (nee "Lew Alcindor"), the uniqueness of his

---

[19] Resp. (ECF No. 18) at 5 (*quoting, inter alia Maremont v. Susan Fredman Design Grp., Ltd.*, 772 F. Supp.2d 967, 971 (N.D. Ill. 2011).

[20] *Maremont*, 772 F. Supp.2d at 971 (false endorsement requires use of "another's *distinctive* mark, name, trade dress, or other device." (emphasis added); *see also id.* ("a false endorsement claim based on the unauthorized use of a person's identity is a type of false association claim, for it alleges the misuse of a trademark, *i.e.*, a symbol or device such as a visual likeness, vocal limitation, or other *uniquely distinguishing characteristic*, which is likely to confuse consumers . . ." (emphasis added, internal marks omitted)

[21] Although some have described Waits' voice as his "trademark," he does not own any sound marks of his voice. He does, however, own a registration in his name as a mark in connection with audio recordings and entertainment services.

[22] *See Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1107 (9th Cir. 1992).

name, and the factual context of the mention of him in the commercial.[23] Even names of lesser or no real fame can lead to claims of false endorsement under the appropriate identifying circumstances. Thus, interior designer Jill Maremont successfully staved off a motion to dismiss a false endorsement claim where she alleged that her former employer co-opted her personal Twitter and Facebook accounts to make statements from those specific accounts without her authorization. As the Court noted there, the plaintiff alleged that her "image appeared on each personal [Facebook] Post and Tweet, which unmistakably distinguished her likeness."[24]

Unlike these cases, Plaintiff Dr. Joshi does not show how the simple use of the name and title "Dr. Jay Joshi" without more would indicate a reference to him to imply an endorsement as opposed to a reference to the Defendant, who is also Dr. Jay Joshi. While the fact that a trademark registration or protectable trademark rights might not be dispositive on the endorsement issue, the concept of a specific, identifiable source of the supposed endorsement still exists. Because Plaintiff Dr. Joshi has not alleged facts that make any plausible connection to him with respect even to the bare reference to "Dr. Jay Joshi" by the Defendant, his argument that no trademark rights are necessary still fails to save his claim.

### C. Plaintiff Dr. Joshi's Lanham Act Claim For Dilution Fails Because He has not Pleaded, nor Could he Plausibly Plead that He is a "Household Name" in the United States.

Plaintiff Dr. Joshi ignores every single case against a finding of dilution cited in Defendant Dr. Joshi's brief. He does not even attempt to distinguish a single one. Those authorities cited show that Plaintiff Dr. Joshi has not, and could not ever, plead a claim for trademark dilution. As noted

---

[23] *See Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407 (9th Cir. 1996). Abdul-Jabbar, who played for one of the most successful UCLA basketball teams, winning three NCAA championships in each of the three years he competed, is the all-time leading scorer in the NBA. He has a trademark registered for his current name, but it was not at issue in that case.

[24] *Maremont*, 772 F. Supp.2d at 969.

in the Defendant's opening brief, it is bordering on frivolous, if not actually so, to suggest that "Dr. Jay Joshi" is a "household name." Moreover, neither of the two cases Plaintiff Dr. Joshi cites in his response alter this conclusion.[25]

The cited decision in *Best Vacuum* was a motion to dismiss. It was decided before the United States Supreme Court's decisions in *Iqbal* and *Twombly.* There, Magistrate Judge Ashman applied the old *Conley v. Gibson*[26] test where dismissal could only occur if it "appear[ed] beyond a doubt that Plaintiff can prove no set of facts to support the allegations in its claims."[27] About two and a half years after Judge Ashman's decision, the Supreme Court replaced the "no set of facts" standard with the "plausibility" standard in *Bell Atlantic Corp. v. Twombly.*[28] Thus, *Best Vacuum* does not provide a basis for concluding that Plaintiff Dr. Joshi has adequately pleaded fame under the currently-applicable *Twombly/Iqbal* standard, and as a motion-to-dismiss decision based on an overruled standard, can no longer be considered good law on that point. [29]

---

[25] *See* Resp. at 12-13 (citing *Best Vacuum, Inc. v. Ian Design, Inc.*, No. 04 C 2249, 2005 U.S. Dist. Lexis 9794, at *7 (N.D. Ill. Jan 18, 2005) and *Doctor's Data, Inc. v. Barrett,* No. 10 C 3795, 2001 U.S. Dist. Lexis 134921, at *25 (N.D. Ill. Nov. 22, 2011)).

[26] *Conley v. Gibson*, 355 U.S. 41, 45 (1957).

[27] *Best Vacuum*, supra at *4 (citing *Hernandez v. City f Goshen*, 324 F.3d 535, 537 (7th Cir. 2003)) (which in turn cites, *inter alia Conley*, at 45).

[28] 550 U.S. 544, 127 S. Ct. 1955, 1969 (2007)

[29] Looking at Judge Ashman's treatment of the alleged mark in the plaintiff's subsequent motion for preliminary injunction (decided the same day), strongly suggests that the plausibility standard would not have been met in that case under the *Twombly / Iqbal* standard. *See Best Vacuum v. Ian Designs, Inc.*, No. 04 C 2249, 2005 U.S. Dist. Lexis 9795, at *11-14 (N.D. Ill. Jan. 18, 2005). In the *Best Vacuum* preliminary-injunction ruling, Magistrate Judge Ashman expressed skepticism not merely about fame under the dilution act, but about "secondary meaning" to provide a merely descriptive trademark protection in the first instance. Magistrate Judge Ashman said he was "immediately skeptical that 'Best Vacuum' can *ever* acquire secondary meaning" and receive protection as a mark at all. *Id.* As to Dilution, the Court said "that Plaintiff's mark is not famous. While Plaintiff clearly invested time and money into its business, Plaintiff's mark is not distinct and has not acquired secondary meaning, there is no clear evidence of the mark's degree of recognition, and it appears that some third parties are using terms similar and/or identical to Plaintiff's mark." *Id.*

The evidence provided on that preliminary injunction hearing was even more extensive than the conclusory facts pleaded in this case, but the Court still rejected any finding of fame. While the procedural posture of this case is not the exactly the same as in that preliminary injunction, the later treatment is instructive as to how that Court may have handled a standard higher than *Conley*'s since-rejected "no set of facts" standard.

The only other cited case, *Doctor's Data*, also provides no support for the Plaintiff's position either. In that case, the moving defendant did not "expressly address trademark dilution under the Lanham Act."[30] In other words, the defendant did not argue expressly for the dismissal of any claim for federal dilution. The movant there, unlike Defendant Dr. Joshi here, did not argue that the plaintiff had failed to plead "fame" sufficiently. Put simply, the adequacy of pleading "fame" was not at issue. As a result, Judge Chang decided that the motion did not operate to dismiss any federal dilution claims.[31] Thus, that decision also does not support the plaintiff's position.[32]

**D. The Plaintiff Failed to Respond to Any of the Arguments for Dismissing his State Law Dilution Claims (Count IV and V).**

The Plaintiff's state law trademark dilution claims (Count IV – Illinois statutory claim and Count V – Illinois common law claim) should be dismissed for the reasons stated in Defendant Dr. Joshi's opening brief. Plaintiff Dr. Joshi does not respond to any of those arguments and should, in addition to those reasons for dismissal, be deemed to have abandoned such claims.[33]

**E. The Plaintiff's Statutory State-Law and State Common Law Unfair Competition Claims (Count II, VI, VII ), Including his Unjust Enrichment Claim (Count VIII) Fail Because his Underlying Lanham Act Claims Fail.**

In his opening brief, Defendant Dr. Joshi noted that the plaintiff's unjust enrichment claim and various state-law unfair competition claims, based as they were on the same underlying

---

30 2001 U.S. Dist. Lexis 134921, at *22.

31 *Id.*

32 Notably, in subsequent motion practice, the plaintiff expressly stated that it had never even intended to claim or plead a federal dilution claim, further underscoring the fact that the earlier decision is *dicta* on this point. *See Doctor's Data v. Barrett*, 170 F. Supp. 3d 1087, 1099 (N.D. Ill. 2016) ("In its response [plaintiff] clarifies for the first time that it is *not* claiming trademark dilution under § 43(c) of the Lanham Act and that Count I is directed solely at false advertising under § 43(a) of the Lanham Act.")

33 *Divane v. Northwestern University*, No. 16 C 8157, 2018 U.S. Dist. LEXIS 87645, at *33 (N.D. Ill. May 25, 2018) ("Defendants move to dismiss this count, but plaintiffs did not respond. Accordingly, the Court deems the claim abandoned") (citations omitted).

conduct as the Lanham Act, would rise or fall with the Lanham Act claim.[34] In his response brief, Plaintiff Dr. Joshi ignores any argument regarding Counts II, V, and VI, and only addresses Count VIII, alleging unjust enrichment. Regarding that claim, he concedes that the unjust-enrichment claim stems from the same operative facts as the Lanham Act claim,[35] but says first that "Defendants cite to no authority" in support of their legal proposition and second that, regardless of authority, the idea that federal courts treat such claims this way was a "mistaken statement of the law."[36] Plaintiff is wrong on both contentions.

First, Plaintiff Dr. Joshi is wrong that Defendant Dr. Joshi did not cite authority in support of its legal argument. The supporting brief pointed to authority from the United States Court of Appeals for the Seventh Circuit in support of the proposition that state-law claims arising out of the same facts as a Lanham Act claim rise or fall with the Lanham Act claim.[37] Notwithstanding citing to the proper page of Defendant Dr. Joshi's brief in leveling this charge, Plaintiff Dr. Joshi ignores the footnote containing the relevant citations to authority, including the *Gimix* case, which specifically called out claims for unjust enrichment.[38]

Second, Plaintiff Dr. Joshi is wrong that the statement of law for which these cases are cited are "incorrect." In addition to the *Gimix* case noted above and cited in the Defendants' opening brief, numerous other cases exist on this same point of law repeatedly in Seventh Circuit cases and in from this Court as well, as recently as a few months ago.[39] Defendant Dr. Joshi is not aware of

---

[34] *See* Brf. at 7, n.19 (citing, *inter alia*, *Gimix, Inc. v. JS & A Group, Inc.*, 699 F. 2d 901, 908 (7th Cir. 1983) (further citations omitted).

[35] *See* Resp. at 13 (admitting that its unjust enrichment claim is based on the allegations that Defendant Dr. Joshi supposedly "misappropriate[ed] Plaintiff Joshi's name, credentials, and commercial reputation . . ..")

[36] Id.

[37] *See infra*, *n.* 31.

[38] *Gimix*, 699 F.2d at 908 ("All of the plaintiff's other claims – infringement, dilution, unfair competition, deceptive practices, injury to business reputation and *unjust enrichment* – depend upon the allegations of trademark infringement and false advertising discussed above.") (emphasis added).

[39] *See, e.g.*, *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("If an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to

any cases to the contrary and Plaintiff Dr. Joshi does not cite to any in his response. As Defendant Dr. Joshi noted in his opening brief, because the Lanham Act claims fail, so do all the other claims arising out of the same operative facts.

**CONCLUSION**

Plaintiff Dr. Jay Joshi has failed to state a claim for infringement or false endorsement or sponsorship under the Lanham Act. He has abandoned his infringement claim in the face of Defendants' motion and there are no facts in his Complaint from which it can be plausibly inferred that the Defendant did or said anything to suggest that Plaintiff Dr. Joshi "endorsed" or "sponsored" Defendant Dr. Joshi's medical services. Additionally, "Dr. Jay Joshi" is not a household name. The Court should not even permit repleading of such a baseless claim. Finally, because these two federal claims fail, all of the related state-law claims based on the same operative facts fail as well. The Court should therefore dismiss the Complaint in its entirety.

For Dr. Jay K. Joshi, Institute of Advanced Care & Analytics, PC d/b/a Prestige Clinics

/s/ Michael La Porte

William W. Flachsbart (wwf@fg-law.com)
Michael R. La Porte (mrl@fg-law.com)
FLACHSBART & GREENSPOON, LLC
333 N. Michigan Ave. – Suite 2700
Chicago, IL 60601
(312) 551-9500 (phone)
(312) 551-9501 (fax)

this related claim – and, of course, unjust enrichment will stand or fall with the related claim.") (*citing Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well."); *See, e.g., Kurth v. Hertz Corp.*, No. 18 C 2785, *9, 2018 U.S. Dist. Lexis 182808 (Oct. 24, 2018) (citing *Cleary* and dismissing unjust enrichment claim based on same operative facts as consumer fraud claims); *Gubala v. Allmax Nutrition, Inc.*, No. 14 C 9299, 2015 U.S. Dist. Lexis 144583 *22 (Oct. 26, 2015) (Ellis, J.) (same).

**CERTIFICATE OF SERVICE**

The undersigned attorney of record certifies that on January 21, 2019, a copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ Michael La Porte
Michael R. La Porte (mrl@fg-law.com)
Flachsbart & Greenspoon LLC
333 N. Michigan Ave., Suite 2700
Chicago, IL 60601-3901
Phone: (312) 551-9500
Fax: (312) 551-9501