UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. JAY JOSHI, NATIONAL PAIN CENTERS, LLC, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 18 c 5426<br>)<br>) Judge Sara L. Ellis |
| DR. JAY K. JOSHI, INSTITUTE OF ADVANCED CARE & ANALYTICS, PC d/b/a PRESTIGE CLINICS | )<br>)<br>)<br>) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Dr. Jay Joshi, the founder of and sole treating physician at National Pain Centers, LLC ("NPC"), specializes in treating patients with chronic pain. He developed a reputation for his conservative use of opioids to treat patients, as well as his advocacy for educating physicians about responsible treatment practices in the face of the opioid epidemic. Defendant Dr. Jay K. Joshi is a general practitioner at Prestige Clinics ("Prestige") who happens to have the same name as Plaintiff. Plaintiff alleges that Defendant capitalized on this coincidence by misappropriating Plaintiff's reputation and credentials to bolster his own practice. Plaintiff brought this suit against Defendant[1] for: 1) false designation of origin, sponsorship, or endorsement, and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2, the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2, as well as Illinois and Indian common law (Counts I, II, VI, and VII); 2) trademark infringement under the Lanham Act,

---

[1] This Opinion refers to Dr. Jay Joshi as the "Plaintiff" and to Dr. Jay K. Joshi as the "Defendant" in order to avoid confusion. Although this opinion sometimes refers to NPC separately, the Court considers its claims the same as Plaintiff's claims.

Illinois common law, and Indiana common law (Counts I, VI, VII); 3) trademark dilution under the Federal Trademark Dilution Act of 1995 ("FTDA"), as amended by the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c), the Illinois Trademark Registration and Protection Act ("ITRPA"), 765 Ill. Comp. Stat 1036/65, and Illinois common law (Counts III, IV, and V); and 4) unjust enrichment (Count VIII). Defendant moves the Court to dismiss the complaint.

The Court grants in part and denies in part Defendant's motion. Because Plaintiff has sufficiently pleaded his claim of false designation of origin and unfair competition, as well as for trademark infringement, he may proceed with Counts I, II, VI, VII, and VIII. Plaintiff has not sufficiently alleged his trademark dilution claims, so the Court dismisses Counts III, IV, and V.

## BACKGROUND[2]

Plaintiff has practiced in the field of pain medicine for eighteen years. He entered medical school when he was sixteen through an accelerated honors program. He then completed an internship in internal medicine at Northwestern University before completing a residency and fellowship at Henry Ford Hospital in Detroit, Michigan. During his fellowship, Plaintiff trained in interventional spine and pain management, and he is now a board-certified anesthesiologist. Plaintiff cultivated his practice and reputation around the conservative use of pain medicine, only prescribing opioids after a thorough evaluation of his patient's needs and exhausting other options. With the rise of the "opioid epidemic," Doc. 1 ¶¶ 17–20, Plaintiff has spoken publicly about the dangers of over-prescribing opioids and the need for educating physicians who are not trained in pain management. He has spoken "at over 600 conferences and presentations" on this topic, "including PAINWeek, the largest Pain Management Conference in the United States." *Id.* ¶ 19. He has also worked for the Department of Substance Abuse at the World Health

---

[2] The facts in the background section are taken from Plaintiff's complaint and are presumed true for the purpose of resolving Defendant's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

Organization in Geneva, Switzerland. In 2011, Plaintiff founded NPC, which operates two clinics and two surgical centers in the Chicago metropolitan area. NPC's "primary stock in trade" is the pain management services and reputation of Plaintiff, who is its sole treating physician. *Id.* ¶ 16. NPC and Plaintiff have used the name Dr. Jay Joshi prominently in their advertisements and have spent over $1 million to market their services.

Until recently, Defendant practiced general medicine at Prestige, located in Illinois and Indiana. As a family medicine physician, Defendant did not specialize in any particular area of medicine, nor did he receive training specifically in anesthesiology or pain medicine. At some point, however, Defendant began marketing himself as a pain specialist, utilizing his shared name with Plaintiff and capitalizing on Plaintiff's reputation for pain management. For example, Defendant purposely combined or failed to fix his contact information on Plaintiff's online professional profiles, and he misappropriated Plaintiff's credentials and patient reviews in his marketing. He also "gave interviews to journalists who were trying to get in touch with, and then thought they were speaking with," Plaintiff. *Id.* ¶ 23.

As a result of Defendant's actions, more people began seeking treatment at Prestige, to the point where Defendant saw thirty to forty pain patients a day. Between April and December 2017, Defendant issued more than 6,000 prescriptions for controlled substances, and he became one of the leading prescribers of pain medications in the state of Indiana. In January 2018, prosecutors indicted Defendant for illegally prescribing opioids. The indictment alleged that Defendant signed prescriptions without seeing patients, and that he had his staff give out prescriptions while he was on vacation. In July 2018, Defendant pleaded guilty to illegally prescribing opioids. The news on local television stations, online, and in print, including in the Chicago Tribune reported on the indictment and subsequent plea.

The publicity surrounding Defendant's criminal case took its toll on Plaintiff and NCP. Other physicians stopped referring their patients to Plaintiff because they thought he was the one who had been indicted. People that Plaintiff "ha[d] known for years, even decades" stopped associating with him. *Id.* ¶ 27. Plaintiff typically gave over fifty presentations a year at different conferences, but "has not received a single invitation to speak" since Defendant's indictment. *Id.*

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Defendant first argues that Plaintiff cannot state a claim for false designation of origin, sponsorship, or endorsement, and unfair competition under the Lanham Act because Defendant did not use false or misleading representations to convey that Plaintiff endorsed or sponsored Defendant's medical services. Second, Defendant maintains that the Court should dismiss Plaintiff's trademark infringement claims because he does not have a protectable mark in the name Dr. Jay Joshi. Third, Defendant asserts that even if Dr. Jay Joshi is a valid mark, Plaintiff

has not sufficiently alleged that it is famous to support his trademark dilution claims. Fourth, Defendant asserts that the Court must dismiss the Illinois trademark dilution claims because Plaintiff and Defendant are competitors.

Although Defendant moves to dismiss the entire complaint, the parties agree that the Court need not address each count separately. Plaintiff's federal, state and common-law claims are largely analyzed in the same way. *IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, 304 F. Supp. 3d 746, 759 (N.D. Ill. 2018) ("The Court applies the same analysis for the Lanham Act and common law claims."); *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994) ("Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act."). Because Plaintiff's unjust enrichment claim depends on the same underlying conduct, the Court considers it as well under the federal analysis. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim."). The Court excludes only Plaintiff's trademark dilution claims, which the Court analyzes differently under federal and state law. *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1100 n.9 (N.D. Ill. 2016). Therefore, with the exception of Plaintiff's dilution claims, the Court "will treat this case as a federal Lanham Act case, analyzing the parties' contentions under the principles and case law of that statute." *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 881 (7th Cir. 1997).

Before considering Defendant's arguments, the Court briefly addresses its subject matter jurisdiction to hear NPC's claims. Defendant argues, in a footnote, that because NPC does not own any rights in the name Dr. Jay Joshi, it does not have standing to assert any claims under the Lanham Act. But the only case Defendant cites, *Gruen Marketing Corp. v. Benrus Watch Co.*,

specifically states that a party has standing to assert a claim if it has a "reasonable interest to protect, which some courts have characterized as a commercial interest." 955 F. Supp. 979, 983 (N.D. Ill. 1997) (citation omitted). NPC has a commercial interest in protecting the reputation and name of its sole treating physician, and therefore, NPC has standing to assert claims under the Lanham Act. *Id.*

## I. False Designation of Origin, Sponsorship, or Endorsement, and Unfair Competition

Although the Lanham Act mostly deals with issues related to trademarks, a valid mark is not a prerequisite to state a claim under § 43(a) of the Act, codified at 15 U.S.C. § 1125(a). *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28–29, 123 S. Ct. 2041, 156 L. Ed. 2d 18 (2003). "[Section] 43(a) created a federal remedy against a person who used in commerce either a false designation of origin, or any false description or representation in connection with any goods or services." *Id.* at 29 (internal quotation marks omitted). To adequately state a claim under the Lanham Act, a plaintiff must allege: 1) that the defendant used a false or misleading representation, description, or designation of origin, 2) in connection with goods or services in interstate commerce; and 3) that the plaintiff believes he is likely to be damaged as a result of the misrepresentation. *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695–96 (7th Cir. 1999). Whether Plaintiff is likely to be damaged in this case means considering whether Defendant's misrepresentations are "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of [Defendant] with [Plaintiff], or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by [Plaintiff]." 15 U.S.C. § 1125(a)(1)(A); *see Web Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990) (explaining that plaintiff could demonstrate that he was likely to be damaged by showing consumers would be confused by defendant's misbranding).

Defendant argues that the complaint does not "identify any claim of origin (false or otherwise) of Defendant Dr. Joshi's medical services." Doc. 21 at 6. Defendant also contends that the complaint does not allege specific false or misleading representations "that could possibly lead consumers to believe incorrectly that Plaintiff Dr. Joshi endorses or sponsors the services provided by Defendant Dr. Joshi." *Id.* at 7. In other words, Defendant demands that Plaintiff state in greater detail what actions or statements Defendant made that form the basis of his claims. But all Plaintiff needs to allege at this stage is "a plausible claim for relief," *Iqbal*, 556 U.S. at 679, after which he "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint," *Twombly*, 550 U.S. at 563 (citation omitted). Plaintiff has done this. He alleges that Defendant made false or misleading representations (that he was a pain specialist, that he misappropriated Plaintiff's credentials, and that he gave interviews to journalists who thought he was the other Dr. Joshi) in interstate commerce (he marketed himself in Illinois and Indiana), which damaged Plaintiff (Defendant diverted clients and press away from Plaintiff, and the publicity surrounding Defendant's criminal charges devastated Plaintiff's medical practice). That is all Plaintiff needs to allege to proceed with his claims. *See Kennedy*, 187 F.3d at 695–96. He does not need to plead specific "facts matching all statutory 'elements' and judicial 'factors.'" *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017). "A full description of the facts that will prove the plaintiff's claim comes later, at the summary-judgment stage or in the pretrial order." *Id.*

## II. Trademark Infringement

To state a claim of trademark infringement, Plaintiff must allege that 1) Dr. Jay Joshi is a protectable mark, and 2) that Defendant's use of the mark is likely to cause confusion among consumers. *Phoenix Entm't Partners v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016). A mark is

7

any "word, name, symbol, or device" that is used to "identify and distinguish" a person's goods or services from another person's goods or services. 15 U.S.C. § 1127. Personal names are considered "descriptive marks," meaning they are not inherently distinctive the same way that "fanciful" or "arbitrary" marks are. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 786, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992). Descriptive marks are not protected unless they have acquired secondary meaning. *Id.*

In *Peaceable Planet, Inc. v. Ty, Inc.*, the Seventh Circuit explained that requiring personal names to have secondary meaning "is better regarded as a generalization than as the premise of a syllogism," one whose "application is to be guided by the purposes that we have extracted from the case law." 362 F.3d 986, 990 (7th Cir. 2004). "The reluctance to allow personal names to be used as trademarks reflects valid concerns (three such concerns, to be precise), but they are distinct from the concern that powers the rule that descriptive marks are not protected until they acquire secondary meaning." *Id.* at 989. Here, at least one of the rationales animating the personal name "rule" is apparent: courts are "reluctan[t] to forbid a person to use his own name in his own business." *Id.* As such, Plaintiff must show that the public came to uniquely associate the name Dr. Jay Joshi with Plaintiff and NPC's pain management services. *See Tartell v. S. Fla. Sinus & Allergy Ctr., Inc.*, 790 F.3d 1253, 1258 (11th Cir. 2015) (explaining plaintiff doctor would need to show that "present-day [potential patients] would specifically associate [his] name with [his services]" (alterations in original) (citation omitted)).

Defendant argues that the complaint does not allege enough facts for the Court to find that Plaintiff used his name as a mark, "rather than to describe himself as a doctor." Doc. 13 at 9. But Plaintiff alleges that NPC used his name prominently in its advertising and that he and NPC spent over $1 million dollars to advertise and promote their pain management services. Plaintiff states that as a result of his long use and significant marketing activities, "both NPC and

[Plaintiff] have amassed invaluable goodwill in the name 'Dr. Jay Joshi,'" and that people came to associate the name with Plaintiff's "impeccable reputation for responsible pain treatment and management." Doc. 1 ¶ 16. He further alleges that people who were seeking his services became confused by Defendant's false representations, and that this led to a surge in patients at Defendant's practice. This confusion alone suggests that Plaintiff's name acquired the qualities of a mark. S*ee Two Pesos, Inc.*, 505 U.S. at 780 (Stevens, J., concurring) ("[U]nder the Lanham Act [§ 43(a)], the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks. . . . Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a 'likelihood of confusion?'" (citation omitted)); 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 15:11 (5th ed.) ("If buyers are confused between two sources, then this also means that they must have recognized plaintiff's designation as a trademark and associated it only with plaintiff. If this is not so, how could there be any confusion over source or affiliation?").

  Nonetheless, Defendant maintains that proving secondary meaning involves "rigorous evidentiary requirements" including "the duration, extent, and nature of the plaintiff's use of its claimed mark in commerce." Doc. 13 at 10. Defendant also argues that the pleading requirement should be "particularly high, given that Defendant Dr. Joshi has the right to use his own name." Doc. 21 at 7. But Defendant demands too much of Plaintiff at this stage of the proceeding. Requiring rigorous evidentiary requirements would be inconsistent with a "a short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Moreover, determining whether a mark has acquired secondary meaning involves a fact-specific inquiry that is generally not appropriate to decide on a motion to dismiss. *See, e.g.*, *Dean v. Cortes*, No. 2:18–cv–02335–CAS (JPRx), 2018 WL 3425016, at *6 (C.D. Cal. July 12, 2018) ("[C]ourts have determined that secondary meaning need only be pled generally for purposes of

defeating a motion to dismiss."); *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 213 (S.D.N.Y. 2015) ("[T]he question of whether a descriptive mark has acquired the secondary meaning necessary to be distinctive generally should not—and here cannot—be resolved on a motion to dismiss.").

Defendant's objections that the complaint lacks enough detail could have been made under Federal Rule of Civil Procedure 9(b) for cases alleging fraud. For the allegations that Defendant "began holding himself out to the public as a pain specialist, despite having no experience or expertise in pain medicine," and that he misappropriated Plaintiff's credentials and "intentionally abetted" the confusion among patients, Doc. 1 ¶¶ 22–23, all seem to be "premised upon a course of fraudulent conduct" so as to invoke Rule 9(b). *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). But Defendant does not mention Rule 9(b) and has thereby waived its requirements. *Omans v. Manpower, Inc.*, No. 11 C 8178, 2012 WL 1565339, at *5 (N.D. Ill. May 2, 2012) ("Defendant did not move to dismiss this count on Rule 9 grounds, and Rule 9 objections are thereby waived."); *United Nat. Records, Inc. v. MCA, Inc.*, 609 F. Supp. 33, 38–39 (N.D. Ill. 1984) ("A party who fails to raise a Rule 9(b) objection normally waives the requirement."); *see also Gensler v. Strabala*, 764 F.3d 735, 739 (7th Cir. 2014) (declining to affirm dismissal of complaint on the alternative ground that it lacked sufficient particularity because appellee did not invoke Rule 9(b)). Under the pleading standards set out under *Twombly*, 550 U.S. at 563, and *Iqbal*, 556 U.S. at 679, all Plaintiff need allege is that his claim is plausible. Plaintiff has done so and may proceed with his trademark infringement claims. Because Plaintiff's unjust enrichment claim depends on the same underlying facts, he may also proceed with that claim. *Cleary*, 656 F.3d at 517.

### III. Trademark Dilution

#### A. Dilution under the FTDA

To state a valid dilution claim, Plaintiff must show 1) the mark Dr. Jay Joshi is famous, 2) Defendant adopted the same name after Plaintiff's mark became famous, 3) Defendant's use of his name will likely dilute Plaintiff's mark, and 4) Defendant uses his name in commerce for commercial purposes. *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 466 (7th Cir. 2000). Plaintiff does not need to show a likelihood of confusion. *Id.* Instead, Plaintiff can show that Defendant harmed the reputation of Plaintiff's mark (tarnishing) or impaired the distinctiveness of plaintiff's mark (blurring). 15 U.S.C. § 1125(c). Fame in the context of a dilution claim means that the mark "is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." *Id.* This requires a level of fame far beyond that required for the likelihood of confusion test. *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012) ("It is well-established that dilution fame is difficult to prove"); *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 393 F.3d 755, 763 (8th Cir. 2005) ("The judicial consensus is that 'famous' is a rigorous standard."); *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999) ("Dilution is a cause of action invented and reserved for a select class of marks[.]"); McCarthy, *supra*, § 24:104 ("Under both state and federal antidilution laws, the general rule is that only very well-known and strong marks need apply for the extraordinary scope of exclusivity given by antidilution laws."). To reach the requisite level of fame, a mark must generally be a "household name." *Coach Servs.* 668 F.3d at 1373 (citation omitted).

Defendant maintains that the name Dr. Jay Joshi is not famous, and that such a claim borders on the frivolous. The Court agrees that Plaintiff's allegations cannot plausibly meet such a stringent standard. Plaintiff alleges that he has been recognized nationally and internationally for his achievements, that he lectures regularly around the country, and that he has spent over $1 million dollars to advertise and promote his services. It may well be true that Plaintiff has

become "famous in the field of pain medicine." Doc. 1 ¶ 16. But Congress specifically amended the FTDA to eliminate "niche fame" and instead "us[es] the 'general consuming public' as the benchmark." *Coach Servs.*, 688 F.3d at 1372 (quoting 15 U.S.C. § 1125(c)). National or even international publicity is not enough. *See Plumeus, Inc. v. Intersog LLC*, No. 13 C 2206, 2013 WL 5609331, at *2 (N.D. Ill. Oct. 11, 2013) (finding "substantial resources" invested in "numerous national and international marketing campaigns" insufficient to state a plausible claim). Nor are millions of dollars spent on marketing. *See Black & Decker Corp. v. Positec USA Inc.*, No. 11-cv-5426, 2015 WL 1543262, at *34 (N.D. Ill. Mar. 31, 2015) (finding $150 million spent on promoting trade dress and $20 billion in sales of power tools only established recognition in a niche market and was insufficient to survive motion for summary judgment). In *Coach Services*, the Federal Circuit considered a dilution claim that appellant—who sells luxury goods using the "COACH" mark—had filed in opposition to a test preparation company registering the same mark. 668 F.3d at 1362. To show that the COACH brand was famous, appellant submitted that it had used the mark for over fifty years, that it operated approximately 400 retail stores, that it spent between $30 to $60 million a year on advertising, and that its annual sales were approximately $3.5 billion. *Id.* at 1367. The court found that this was not enough to establish fame for dilution under the 15 U.S.C. § 1125(c). *Id.* at 1376. Based on the allegations in his complaint, Plaintiff cannot hope to show nearly as much recognition as the appellant did in *Coach Services*. *See TrueNorth Cos., L.C. v. TruNorth Warranty Plans of N. Am., LLC*, 292 F. Supp. 3d 864, 873 (N.D. Iowa 2018) ("[T]he nature of a dilution claim itself makes it difficult to state a claim to relief that is plausible on its face."); s*ee also Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 678 (W.D. Tex. 2008) (finding that University of Texas longhorn logo, despite University's millions of dollars in licensing royalties, retail sales of nearly $400 million, and the logo's prominent

display during nationally televised sports, had only acquired niche fame that could not survive summary judgment). For these reasons, Plaintiff has not stated a plausible dilution claim under the FTDA.

B.     **State and Common Law Dilution Claims**

The ITRPA only requires that a mark be famous in Illinois. 765 Ill. Comp. Stat. 1036/65. It also requires that the plaintiff show dilution occurred, as opposed to a likelihood of dilution. *See Doctor's Data, Inc.*, 170 F. Supp. 3d at 1100 n.9. Defendant does not ask the Court to dismiss Plaintiff's state dilution claims for lack of fame. Instead, Defendant contends that protection under the ITRPA is not available to competitors. *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 619 (7th Cir. 1993) ("[T]he protection of the Illinois Anti-Dilution statute is not available to competitors under Illinois case law."). Parties are in competition with one another if they vie for the same market, or if consumers could view one party's services as an alternative to the other party's services. *See, e.g.*, *Manley v. Boat/U.S., Inc.*, 75 F. Supp. 3d 848, 857 (N.D. Ill. 2014) ("Parties qualify as competitors in the context of dilution claims when they are engaged in the same kind of business in the same area."); *S & A Futures, LLC—Series 2 v. Sysco Chicago, Inc.*, No. 11 C 7629, 2012 WL 851556, at *7 (N.D. Ill. Mar. 13, 2012) (finding parties were competitors where defendant's food products were seen as an alternative to plaintiff's food products). Neither party addresses whether the analysis for Plaintiff's common law dilution claim differs from his statutory claim; thus the Court presumes they are the same. *See IPOX Schuster*, 304 F. Supp. 3d at 764 (applying same analysis to dilution claims under the ITRPA and Illinois common law).

Plaintiff does not respond to Defendant's arguments on this point. Therefore, the Court assumes Plaintiff has abandoned his state and common law dilution claims and the Court need not consider the issue further. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (a

party waives an argument "where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss."); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) (collecting cases). Accordingly, the Court dismisses Plaintiff's federal, state, and common law dilution claims.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendant's motion to dismiss [13]. The Court dismisses Plaintiff's claims for trademark dilution under the FTDA, the ITRPA, and Illinois common law without prejudice (Counts III, IV, and V). Plaintiff may proceed with his remaining claims for false designation of origin, sponsorship, or endorsement, and unfair competition; trademark infringement; and unjust enrichment (Counts I, II, VI, VII, and VIII).

Dated: August 1, 2019

_____
SARA L. ELLIS
United States District Judge